## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS J. STYCZINSKI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WESTMINSTER MINT, INC., *et al.*,<br><br>Defendant. | Case No. 14-cv-00619 (SRN/HB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Joseph A. Osefchen, Shane T. Prince, and Stephen P. DeNittis, DeNittis Osefchen PC, 525 Route 73 North, Suite 410, Marlton, New Jersey 08053; and Steven J. Ellison, Ellison Law Offices, 14565 114th Street North, Stillwater, Minnesota 55082, for Plaintiff.

Kelly W. Hoversten and Craig P. Miller, Gray Plant Mooty Mooty & Bennett PA, 80 South 8th Street, Suite 500, Minneapolis, Minnesota 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 19]. For the reasons set forth below, the Court denies Defendants' Motion.

### I.     BACKGROUND

Plaintiff, Thomas J. Styczinki, a resident of Hennepin County, Minnesota brought this class action on behalf of purchasers of two or more "imitation numismatic items" manufactured, distributed, and/or sold by Defendants, Westminster Mint, Inc., a Minnesota Corporation doing business throughout the United States, Bullion

International, Inc. d/b/a Highland Mint, International Fulfilment House, a Florida Corporation doing business in Minnesota and throughout the United States, Ian Clay, individually; and Michael Kott, individually (collectively "Defendants"). (Comp ¶¶ 1-9 [Doc. No. 1-1.) Plaintiff alleges that Defendants have failed to comply with their obligations under the Hobby Protection Act, 15 U.S.C. § 2101("HPA") by unlawfully manufacturing, importing, distributing, marketing, and/or selling "imitation numismatic items" not appropriately marked "COPY," as required under the HPA. (Id. ¶¶ 1-11.) Plaintiff seeks to enjoin Defendants from engaging in unlawful business practices and seeks monetary damages. (Id. ¶ 1.)

A.   The Hobby Protection Act

In 1973, Congress enacted the HPA to protect hobbyists and collectors from being defrauded by corrupt individuals and businesses that marked or distributed imitation numismatic items. DeMarco v. Nat'l Collector's Mint, Inc., 229 F.R.D. 73, 77 (2d Cir. 2005). The HPA provides that

> [t]he manufacture in the United States, or the importation into the United States, for introduction into or distribution in commerce of any imitation numismatic item which is not plainly and permanently marked "copy", is unlawful and is an unfair or deceptive act or practice in commerce under the Federal Trade Commission Act.

15 U.S.C. § 2101(b). The term "original numismatic item" is defined in the HPA as: "[a]nything which has been a part of a coinage or issue which has been used in exchange or has been used to commemorate a person or event." Id. at § 2106(3). In contrast, the term "imitation numismatic item" is defined in the HPA as "[a]n item which purports to

be, but in fact is not, an original numismatic item or which is a reproduction, copy, or counterfeit of an original numismatic item." Id. at § 2106(4).  The HPA provides that "any interested person" may commence a private enforcement action for the violation of § 2101(b).  Id. at § 2102.

The HPA protects would-be consumers from unscrupulous business practices so that consumers are not deceived into "believing they are buying items that are original numismatic items . . . when, in fact, they are buying copies of money."  Demarco, 229 F.R.D. at 77.  Neither knowledge nor intent to deceive need be shown on the part of the business to prove that the HPA has been violated.  In re Gold Bullion Int'l, Ltd., 92 F.T.C. 196 (1977).

      B.     United States and Canadian "Original Numismatic Items"

On or about November 24, 1986, the United States Mint released the American Silver Eagle coin composed of one troy ounce of 99.9% pure silver.  (Comp. ¶ 13 [Doc. No. 1-1].)  The American Silver Eagle coin is legal tender with a face value of one dollar and is an "original numismatic item" as defined by the HPA because it is coinage that has been or is "currently used in exchange."  (Id. ¶¶ 13-15); see 15 U.S.C. § 2106(3).  Among other identifying characteristics, the front side of the American Silver Eagle coin displays Adolph A. Wienman's "Walking Liberty" pictorial and contains inscriptions of the word "LIBERTY" and the phrase "IN GOD WE TRUST."  (Comp. ¶ 17 [Doc. No. 1-1].)  The reverse side carries an image of a heraldic eagle behind a shield holding an olive branch in its right talon and arrows in its left talon.  (Id. ¶ 18.)  The eagle carries a banner

inscribed with the phrase "E PLURIBUS UNUM."  (Id.)  Additionally, the reverse side is inscribed with the words "UNITED STATES OF AMERICA."  (Id.)

In 1988, the Royal Canadian Mint issued the Canadian Silver Maple Leaf coin comprised of 99.99% pure silver.  (Id. ¶ 20.)  The Maple Leaf coin is legal tender in Canada and carries a face value of five Canadian dollars.  (Id. ¶ 21.)  Like the American Silver Eagle coin, the Maple Leaf coin meets the definition of an "original numismatic item" under the HPA because it is used in exchange.  (Id. ¶ 22.)  The front of the Maple Leaf coin depicts the image of Queen Elizabeth II and the year of minting.  (Id. ¶ 24.)  The reverse side presents a centered maple leaf graphic with the number "9999" printed on either side.  (Id.)  In addition, the reverse side of the coin is inscribed with the word "CANADA" and the phrase "FINE SILVER 1 OZ ARGENT PUR."  (Id. ¶ 25.)

In 2011, the Royal Canadian Mint issued the Canadian Timber Wolf coin comprised of 99.99% pure silver.  (Id. ¶ 27.)  Like the Maple Leaf coin, the Timber Wolf coin is legal tender in Canada and carries a face value of five Canadian dollars. (Id. ¶ 28.)  The Timber Wolf coin meets the definition of an "original numismatic item" under the HPA because it is coinage that has been or is "used in exchange."  (Id. ¶ 29.)  The front side of the Timber Wolf coin depicts an image of Queen Elizabeth II alongside an inscription of her name and states a face value of "5 DOLLARS."  (Id. ¶ 30.)  The reverse side carries the graphic of a wolf standing in a snow-covered mountain landscape with the number "9999" below.  (Id. ¶ 31.)  Further, the reverse side is inscribed with the word "CANADA" and the phrase "FINE SILVER 1 OZ ARGENT PUR."  (Id.)

C.  **Defendants' Products**

Defendant Westminster Mint, Inc. ("Westminster") is a Minnesota corporation whose principal place of business is Plymouth, Minnesota.  (Id. ¶ 5.)  Defendant Ian Clay ("Clay") is Westminster's Chief Executive Officer.  (Id.)  Clay shares a business address with Westminster and is responsible for formulating, directing, and controlling the acts and practices of Westminster throughout the United States.  (Id. ¶ 7.)  Through its website, Westminster advertises and sells, among other items, two silver bullion "rounds," described as the American Silver Eagle Design and the Timber Wolf Design.  (Id. ¶ 33.)

 Defendant Bullion International, Inc. d/b/a Highland Mint and International fulfillment House ("Bullion") is a Florida Corporation.  (Id. ¶ 6.)  Defendant Michael Kott ("Kott") is the President of Bullion and is responsible for the merchandise fulfillment and credit card processing of orders made on Westminster's website.  (Id. ¶¶ 8, 34.)

On or about January 20, 2014, Plaintiff purchased both the Silver Eagle round and the Canadian Timber Wolf round from Westminster's website.  (Id. ¶ 33.)  Sometime thereafter, Plaintiff's credit card was charged by Defendant Bullion, and the rounds were shipped from one of Bullion's facilities in Florida.  (Id. ¶ 34.)

Plaintiff alleges that Westminster, Bullion, Clay, and Kott acted in concert to manufacture, import, distribute, market, and sell the American Silver Eagle round and the Canadian Timber Wolf round in the State of Minnesota and throughout the United States in violation of the HPA.  (Id. ¶ 9.)  Plaintiff claims that both the Silver Eagle round and

the Canadian Timber Wolf round are "imitation numismatic items" under the HPA because they are similar to legal tender used in exchange and therefore should have been marked "COPY" per the HPA guidelines.  (Id. ¶ 37.)

The Complaint further alleges that the Silver Eagle round imported and/or manufactured by Defendants is substantially similar to the United States minted Silver Eagle dollar.  Among other characteristics, Plaintiff claims that the Silver Eagle round depicts the identical "Walking Liberty" design by Adolph Weinman, bears the same inscriptions of "LIBERTY" and "IN GOD WE TRUST," and contains the exact image of a heraldic eagle and shield clutching a banner inscribed with the phrase "E PLURIBUS UNUM" as the authentic Silver Eagle coin.  (Id. ¶ 38.)  Further, Plaintiff alleges that Defendants' round bears the inscription "UNITED STATES OF AMERICA" in the same location as the authentic coin.  (Id.)  In light of these similarities, Plaintiff contends that Defendants had an obligation to mark the Silver Eagle round with the word "COPY," as required under the HPA.  (Id. ¶ 43.)

Similar to Defendants' Silver Eagle Round, Plaintiff alleges that Defendants' Canadian Timber Wolf round is substantially similar to the authentic Canadian Maple Leaf and Timber Wolf coinage.  (Id. ¶ 47.)  Specifically, one side of the Timber Wolf round depicts the same maple leaf design as the actual Maple Leaf coin.  (Id.)  Further, the other side of the Timber Wolf round displays the same wolf pictorial used on the authentic Timber Wolf coin and, like the original, carries the inscription "FINE SILVER 1 OZ ARGENT PURE."  (Id.)  Plaintiff thus asserts that Defendants had an obligation to

mark the Canadian Timber Wolf round with the word "COPY" as required under the HPA. (Id. ¶ 43.)

## II. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

### A. Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court assumes all facts in the Complaint to be true and interprets all reasonable inferences from those facts in the light most favorable to the plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1999). The Court need not accept mere conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff infers from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court typically does not consider matters outside the pleadings, see FED.R.CIV.P. 12(d), but may consider exhibits attached to the complaint and documents that are inexorably covered by the pleadings. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003). Here, the Court considers the exhibits attached to the Complaint, which generally consist of photocopy images of the coins in question.

To overcome a motion to dismiss, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). A claim is facially plausible when the plaintiff offers sufficient factual allegations to allow the court to draw a reasonable inference that the defendant is liable for the conduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A pleading that

contains mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint must assert enough fact "to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Id. at 556.

Defendants assert three arguments in support of their Motion to Dismiss: (1) that the rounds at issue and sold by Defendants do not qualify as "imitation numismatic items" under the HPA and therefore need not be marked with the word "COPY;" (2) that Plaintiff's claims fail as a matter of law with respect to Westminster because the HPA applies only to manufactures and importers of numismatic items and Westminster is neither; and (3) regardless of whether Plaintiff has stated an actionable claim, his allegations do not support a cause for monetary damages and he is therefore not entitled to relief. (Defs.' Motion to Dismiss [Doc. No. 19].)

   B. "Imitation Numismatic Items"

Defendants assert that the American Silver Eagle and Canadian Timber Wolf rounds do not qualify as "imitation numismatic items" within the purview of the HPA. (Id.). They claim that the Silver Eagle and Timber Wolf rounds are not exact replicas of any pre-existing currency and contend that there are "notable, striking, and significant design differences" between the rounds and the actual legal tender. (Defs.' Mem. in Support of Motion to Dismiss at 3 [Doc. No. 21].) For example, Defendants note some differences with regard to each round's size, weight, silver content, and graphic artistry relative to the original numismatic items detailed in the Complaint. (Id. at 3-4.) Because of these dissimilarities, Defendants claim that "no reasonable and unsuspecting purchaser

8

could assume the rounds were original coins." (Id. at 1.)  Accordingly, Defendants argue that the rounds are not "imitation numismatic items" and need not be marked with the word "COPY," as required by the HPA.  (Defs.' Motion to Dismiss [Doc. No. 19].)

The Court disagrees with Defendants' narrow application of the HPA.  See Demarco, 229 F.R.D. at 78 (discussing that under the HPA "imitation numismatic items" need not be exact reproductions of existing coins).  Specifically, under the HPA, the term "imitation numismatic item" includes any item that "purports to be, but in fact is not" an original numismatic item, in addition to those items that are wholly "reproduction and counterfeits." 16 C.F.R. § 304.1(d).  In denying a motion to dismiss on similar grounds, the court in Demarco found that the commemorative Freedom Tower Silver Dollar ("FTSD") coin, depicting the September 11th attacks, was an "imitation numismatic item" even though the coin did not resemble any previously minted or presently circulated United States coinage.  229 F.R.D. at 78.  The FTSD was inscribed with the phrases "IN GOD WE TRUST" and "One Dollar." Such phrases are required by law to appear on all United States legal tender.  Id.  The court concluded that "[while the] characteristics of the FTSD might not fool a sophisticated coin collector . . . they could lead an unsophisticated purchaser to believe the FTSD was indeed legal tender issued by the Government." Id.  Therefore the court in Demarco found that the complaint sufficiently alleged that the FTSD purported to be "coinage used in exchange" and was subject to the regulations of the HPA.  Id.

As in Demarco, Plaintiff here has alleged plausible violations of the HPA. The Complaint asserts that the Silver Eagle and Timber Wolf rounds are "imitation

9

numismatic items" within the definition of the HPA. (Comp. ¶ 37 [Doc. No. 1-1].) The Complaint lists specific and numerous characteristics of each round that mimic characteristics of the authentic, government-minted coinage. (Id. ¶¶ 38-48). Among other similarities, the Silver Eagle and Timber Wolf rounds share artistry, written mottos, and markings in the exact locations as the original numismatic items to which they are compared in the Complaint. (Id.) Plaintiff supports these allegations with detailed photographs of both the Defendants' rounds and the authentic legal coinage. (Plaintiff Exhibits A-F [Doc. No. 1-1].) Just as the court noted in Demarco, 229 F.R.D. at 78, here, some of the inscriptions found on the Defendants' Silver Eagle round are required by law to appear on all United States' coinage. Further, the Complaint alleges that the American Eagle and Timber Wolf rounds were not marked "COPY" as required under the HPA. (Comp. ¶¶ 43, 51 [Doc. No. 1-1].) Drawing all reasonable inferences in favor of Plaintiff, the allegations in the Complaint concerning "imitation numismatic items" sufficiently support a claim under the HPA.

### C. Manufacturer or Importer

Defendants next contend that Plaintiff's claim fails as a matter of law with respect to Defendant Westminster because the HPA applies only to manufacturers and importers and Westminster is neither. Again, on a motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and determine if such facts inform a plausible inference that the plaintiff is entitled to relief. See generally Becker, 793 F.2d at 187. Here, Plaintiff alleges a complex business relationship between the Defendants that creates a plausible inference that Defendant Westminster either directly or indirectly

imported and/or manufactured the rounds at issue. (Comp. ¶¶ 4-9 [Doc. No. 1-1].) Further, the Complaint creates "a reasonable expectation that discovery will reveal evidence of [that claim]." Twombly, 550 U.S. at 556. Defendants' argument that Westminster is not a manufacturer or importer does not warrant dismissal under Rule 12(b)(6).

### D. Plaintiff's Request for Relief

Finally, Defendants assert that Plaintiff's allegations do not support a claim for monetary damages because Plaintiff's request for relief is not well-pleaded. (Defs.' Motion to Dismiss [Doc. No. 19].) Defendants contend that Plaintiff has: (1) failed to describe with specificity the monetary damages suffered; and alternatively, (2) may receive less for rescission of the transaction than the value of the silver coins at the spot silver price, thus invalidating any legitimate claim of monetary loss. (Id.) The Court finds that neither argument warrants the dismissal of Plaintiff's claim.

First, Plaintiff requests specific relief in the Complaint, seeking monetary damages resulting from the Defendants' conduct, an injunctive order estopping Defendants from continued violations of 15 U.S.C § 2102(b), and reasonable attorney's fees. Plaintiff's failure to include an exact dollar figure as to damages suffered is not grounds for dismissal of the request for monetary relief. See Andrus ex. rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999) (holding that a request for incorrect relief is not grounds for dismissal); and Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 65 (1978) (determining that a party's omission of a prayer for relief in the pleadings is not a barrier to redress in an otherwise meritorious claim).

Second, Defendants' alternative argument that any requested rescission of the transaction would result in a greater loss to Plaintiff due to the fluctuating value of silver is outside the scope of a 12(b)(6) motion.  Such an inquiry would require the Court to look beyond the Complaint into areas that will almost certainly be contested.  These issues include the exact damages incurred by Plaintiff and the proper method(s) used to calculate such damages.  Again, the scope of this Court's review on a motion to dismiss is limited to the allegations in the Complaint.  See Becker, 793 F.2d at 187.  Assuming, as this Court must, that Plaintiff has suffered some monetary damage as a result of the allegations, this Court finds that the Complaint has raised a plausible basis for such relief.

### III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.   Defendants' Motion to Dismiss [Doc. No. 19] is **DENIED**.


Dated:  November 14, 2014                                        s/Susan Richard Nelson
                                                                 SUSAN RICHARD NELSON
                                                                 United States District Judge